```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

United States of America

    v.                        Case No. 2:00-cr-24-1

Myron T. Clark

## OPINION AND ORDER

Defendant was convicted by a jury on Count 1, conspiracy to possess with intent to distribute and to distribute cocaine base; Counts 4 and 6, distribution of cocaine base; Counts 5 and 7, brandishing a firearm in relation to a drug trafficking crime; Count 8, possession of a firearm by a convicted felon; and Count 9, possession of counterfeit currency. On September 21, 2000, defendant was sentenced to concurrent terms of incarceration of 110 months on Counts 1, 4, 6, 8 and 9, a consecutive term of incarceration of 84 months on Count 5, and a consecutive term of incarceration of 300 months on Count 7. By orders dated December 23, 2011, and July 8, 2015, the terms of incarceration of 100 months were reduced to terms of 51 months, and later to terms of 41 months based on the retroactive amendments to the United States Sentencing Guidelines applicable to drug offenses. See Docs. 142 and 164. Defendant is currently serving a sentence of 425 months (35 years and 5 months) and has served slightly over 21 years. According to the Bureau of Prisons ("BOP"), defendant's projected release date is March 23, 2030. See www.bop.gov/inmateloc/ (last visited February 17, 2021).

On June 3, 2020, defendant filed his first pro se motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. See Doc. 197. The government filed a response in opposition to this motion on June

25, 2020, arguing that defendant had failed to show that he had exhausted his administrative remedies. Defendant, through counsel, gave notice on September 21, 2020, of his withdrawal of Doc. 197 without prejudice.  See Doc. 216.

On June 25, 2020, defendant filed another pro se motion to reduce sentence.  Doc. 204.  Defendant argued that extraordinary and compelling reasons existed for a sentence reduction, including: 1) the change in penalties applicable to multiple offenses under 18 U.S.C. §924(c) implemented under the First Step Act; and 2) defendant's rehabilitation while in prison.  To that motion, defendant attached the December 23, 2019, response of the warden denying his November 29, 2019, request for a reduction in sentence. Doc. 204, Ex. B.  On July 9, 2020, the government filed a response in opposition to the motion.  Doc. 207.  Defendant filed a reply on August 13, 2020.  Doc. 211.

On September 21, 2020, defense counsel filed a supplemental motion in support of defendant's pro se motion, and advanced the additional ground of defendant's medical conditions.  See Doc. 215. On October 28, 2020, defendant, through counsel, filed another motion for compassionate release based on defendant's severe health problems.  Doc. 218.  The government conceded that defendant had exhausted his administrative remedies, but filed a response in opposition to the motion on December 1, 2020.  Doc. 220.  Defense counsel filed a reply on December 6, 2020.  Doc. 222.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]"

18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. 2020). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" §3582(c)(1)(A). Under United States Sentencing Guidelines ("U.S.S.G.") §1B1.13 and Application Note 1, an "extraordinary and compelling" reason is defined as meaning: a defendant suffering from a terminal illness; a defendant suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the institution; a defendant who is at least 65 years of age, who is experiencing a serious deterioration of physical or mental health and has served at least 10 years or 75% of his sentence; and the death or incapacitation of the caregiver of defendant's minor child or the incapacitation of defendant's spouse, where defendant would be the only available caregiver. The government correctly argues that the defendant's reasons for a sentence reduction do not fall within any of the categories discussed in the policy statements contained in U.S.S.G. §1B1.13 and Application Note 1 to that section. However, the Sixth Circuit has held that the policy

statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111. Therefore, the court will not base its decision on the policy statements.

II. Reasons for Compassionate Release

A. Rehabilitation While Incarcerated

Defendant has presented evidence that while incarcerated, he obtained his GED and an Associate of Science in Business degree and completed a 2000-hour apprenticeship program in housekeeping. Doc. 204, Exs. A, D and E. He has submitted a list of 73 classes he attended. Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for compassionate release. See 28 U.S.C. §994(t)("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). However, rehabilitation may be considered along with other circumstances in deciding whether extraordinary and compelling reasons for early release exist. See United States v. Daley, 484 F.Supp.3d 1171, 1175 (M.D. Fla. 2020). The evidence presented demonstrates that defendant has taken extensive, significant and impressive steps, to an unusual degree, towards rehabilitation.

B. Defendant's Medical Conditions

Defendant, who is 52 years old, indicates that he has suffered from the following severe health problems: type II diabetes mellitus; chronic kidney disease, stage 2 (mild); hypertension; hyperlipidemia; anxiety disorder, constipation; chest pain, dizziness and giddiness; and headache. On April 16, 2020, defendant's blood pressure reading was 169/103, and a new

medication was prescribed.  Doc. 215-2, p. 5.  A record dated March 12, 2020, stated that defendant's type II diabetes was currently diet controlled.  Doc. 215-2, p. 6.

Defendant complains that he is unable to obtain the care he needs from the BOP, particularly in light of the COVID-19 restrictions in place.  Defendant asserts that his high blood pressure has been impacted by the lockdown resulting from COVID-19 because he has been unable to exercise.  Defendant was seen on August 22, 2019, for possible glaucoma, and a baseline work-up for glaucoma was recommended.  Doc. 218 -2, p. 23.  There is no evidence that this examination was ever completed.  Defendant complained of eye problems (difficulty focusing) on June 16, 2020, but his ophthalmology appointment had to be rescheduled.  Doc. 215-2, p. 27.  Defendant is also having dental problems, including dental caries extending into pulp, pulpitis, and unsatisfactory restoration of an existing tooth.  Defendant argues that the BOP lacks the ability to provide proper dental care to inmates, noting that he requested a teeth cleaning on October 15, 2019, and was told on March 13, 2020, that the BOP was currently seeing those on the list from November, 2018.  Doc. 215-2, p. 28.

Defendant argues that due to his health conditions, he is at increased risk from COVID-19.  According to the Centers for Disease Control ("CDC"), persons with kidney disease and type 2 diabetes mellitus are at increased risk of severe illness from COVID-19, and persons with hypertension might be at an increased risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 8, 2021).

Defendant tested positive for COVID-19 on June 5, 2020.  Doc.

5

215-2, p. 11. He was admitted to the hospital on that date, and was released on June 8, 2020. Doc. 215-2, pp. 12, 14. Defendant's chief complaint was abdominal pain; he denied having chest pain, shortness of breath or other respiratory symptoms, nausea, or fever. Doc. 215-2, p. 21. The government argues that the risk posed by COVID-19 does not constitute an extraordinary and compelling reason for defendant's early release because defendant has already been infected with COVID-19 and has recovered. Defendant responds by citing cases in which courts have held that the fact that a defendant has already contracted COVID-19 does not preclude compassionate release. Defendant notes the current position of the CDC on this topic:

> CDC is aware of recent reports indicating that persons who were previously diagnosed with COVID 19 can be re-infected. These reports can understandably cause concern. The immune response, including duration of immunity to SARS-CoV-2 infections is not yet understood. Based on what we know from other viruses, including common human coronaviruses, some reinfections are expected.

https://www.cdc.gov/coronavirus/20199-ncov/faq html (last visited February 17, 2021). In short, the possibility of defendant becoming re-infected with COVID-19 and experiencing severe symptoms is speculative but cannot be totally discounted.

As to the likelihood that defendant will be re-exposed to COVID-19, the court notes that defendant is incarcerated at FCI Milan, which currently houses 1,249 inmates. There have been three inmate deaths, 256 inmates have recovered, and 78 staff have recovered. See https://www.bop.gov/coronavirus (last visited March 11, 2021). No inmates and 2 staff members have currently tested positive. As this reduction in numbers indicates, the Bureau of

6

Prisons ("BOP") has taken significant measures to contain the spread of COVID-19 in its institutions. The BOP is also working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure that the BOP is prepared to receive and administer the COVID-19 vaccines. See https://www.bop.gov/coronavirus (last visited March 11, 2021). The BOP reports that 142 staff and 51 inmates at FCI Milan have received the COVID-19 vaccine.

C. Conclusion

The reasons for release advanced by defendant, if considered individually, might not arise to the level of extraordinary. However, the court finds that when considered together in their totality, defendant's medical conditions, the potential risk posed by COVID-19 due to those medical conditions, and defendant's significant efforts towards rehabilitation are sufficient to constitute an extraordinary and compelling reason warranting a sentence reduction.[1]

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offenses in this case were serious. According to the presentence investigation report, defendant participated in the sale of cocaine base, an addictive drug, on 2 separate occasions.

---

[1]Defendant also argued that the non-retroactive change in the penalties for multiple offenses under 18 U.S.C. §924(c) implemented in §403(a) of the First Step Act constitutes an extraordinary and compelling reason for a sentence reduction. This argument faces an uphill battle in light of United States v. Tomes, ___ F.3d ___, 2021 WL 868555 (6th Cir. Mar. 9, 2021). Regardless, because the court has found that defendant's medical conditions and rehabilitation efforts together satisfy the "extraordinary and compelling reason" requirement in this case, the court does not need to decide this issue.

7

However, the total amount of cocaine base attributed to the defendant as relevant conduct was 3.4 grams, a relatively small amount. Defendant, a convicted felon, brandished a firearm during the 2 drug transactions, resulting in a sentence of 84 months on the first count and 300 months on the second count. Although the use of firearms during the drug offenses was serious, in the First Step Act, Congress re-evaluated what would constitute an adequate penalty for multiple §924(c) counts. Under the new law, defendant would have received two 84-month consecutive terms on each of the two §924(c) counts. Defendant would now be serving a total sentence of 17 years and 5 months. He has already served over 21 years. Considering Congress's current view of the type of penalty which is adequate to reflect the seriousness of §924(c) offenses, the reduced sentence requested by defendant would be sufficient to address the seriousness of the offenses for which he was convicted.

As to the history and characteristics of the defendant, at the time of his convictions for the offenses in this case, defendant was in Criminal History Category IV. The presentence investigation report ("PSR") describes defendant's prior criminal record included convictions for drug abuse in 1990; resisting arrest, operating a motor vehicle under suspension, obstructing justice and 2 charges of carrying a concealed weapon in 1991; and assault in 1995. Although this is not an insignificant record, it is not as serious as other records typical of defendants in Category IV.

As discussed above, defendant has presented evidence of his rehabilitation while incarcerated. He has taken courses and completed programs which will increase his potential for obtaining employment. He has completed a drug program, programs on addictive behavior, and cognitive behavioral therapy classes. The BOP

calculated his recidivism risk level as being low. Doc. 211, p. 18. He has had no incident reports within the past 10 years, and states that he has never had a violent incident report. Doc. 211, p. 18. He is now 52 years old, and is presumably more mature than he was when he committed the offenses in this case at 31 years of age. Defendant indicates that upon his release, he plans to live with his brother, Byron Clark, in Columbus, Ohio. The record includes a declaration from Byron Clark stating that he is willing to have defendant live with him at his house, and is also willing to transport defendant to work, medical appointments and appointments with the Probation Office. Doc. 215-1.

The court concludes that a reduced sentence would be sufficient to promote respect for the law, to provide just punishment, and to afford adequate deterrence. The shortened sentence sought by defendant would also be sufficient to protect the public from more crimes by the defendant. In light of defendant's age, his health conditions, his efforts towards rehabilitation and his good conduct while in prison, he is unlikely to engage in further criminal activity if he is released.

The court concludes that the §3553(a) factors weigh in favor of granting defendant's motion for a reduced sentence.

IV. Conclusion

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 204, 215 and 218) are granted. The terms of incarceration previously imposed on Counts 1 and 4 through 9 of the indictment are hereby reduced to terms of time served. The court orders that the defendant shall be released from custody. This order is stayed for fourteen days from the date of this order to facilitate the BOP's ability to quarantine defendant to protect

the community from the potential spread of COVID-19. The court also orders that prior to defendant's release to the residence of his brother, Byron Clark, all firearms must be removed from the residence.

Upon his release, defendant will begin serving the terms of supervised release previously imposed in this case. As an additional condition, defendant shall participate in the Men's Mentoring Program, as recommended by the probation officer.

Defendant is instructed that he must report to the probation office reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame. Defendant shall call the Probation Office at (614)-719-3100 to receive instructions on how to report.

Date: March 11, 2021                 s/James L. Graham
                                        James L. Graham
                                        United States District Judge